### IN THE CIRCUIT COURT OF MONROE COUNTY, MISSISSIPPI

**RUSSELL LITTLE**                                                                                            **PLAINTIFF**

**VS**                                                       **CIVIL ACTION NO. 2020-101-MMM**

**SYNERGIES3 TEC SERVICE, LLC & JOHN DOE**                **DEFENDANTS**

### AFFIDAVIT OF ERIC ATCHLEY

**STATE OF TEXAS**          §
                                     §
**COUNTY OF** _____ §

    BEFORE ME, the undersigned authority, on this day personally appeared ERIC ATCHLEY, who, being by me first duly sworn, deposed and stated upon his oath as follows:

1. My name is Eric Atchley. I am more than 21 years of age and have never been convicted of a felony or an offense involving moral turpitude. I am of sound mind and fully capable of making this affidavit. I have personal knowledge of the matters set forth herein and they are true and correct. I am authorized to make this Affidavit.

2. I am a manager and owner of Synergies3 Tec Services, LLC. My title is Chief Financial Officer. I am familiar with the allegations made by Russell Little, the Plaintiff in Civil Action No. 2020-101-MMM, *Russell Little v. Synergies3 Tec Services, LLC, and John Doe, in his individual and official capacity.*

3. On December 20, 2019, Synergies3 received a Settlement Demand and Offer to Compromise from Mr. Little's counsel. Shortly after the Demand was received, and before Synergies3 was apparently served in this case, the company was undergoing a realignment and shift in responsibilities. Specifically, in late January of 2019, there was only one individual responsible for handling the company's damage claims, Mr. Bo Blanchard. Mr. Blanchard's title was Damage Claim Coordinator, and he was responsible for handling all damage claims, including those related to DirecTV installations.

4. As Synergies3 expanded into new sectors of business and installation, it became clear that it was not feasible to have only one person handling Synergies3's damages claims, especially given the extensive communications required for handling the same. Therefore, Ms. Tracy Hand was brought on board to assist Mr. Blanchard and take over all DirecTV related damage claims.

5. After Ms. Hand was brought on board, Mr. Blanchard ceased handling DirecTV related damage claims and focused on six other sectors of claims for the company. Ms. Hand became the primary person handling DirecTV damage claims. It was during this change in position that Synergies3 began internal discussions related to Mr. Little's claims

**EXHIBIT 1**

#6235065.4



FILED
SEP 28 2020
DANA L SLOAN
CIRCUIT CLERK
MONROE CO., MS

6. It is Synergies3's normal business practice to submit claims to the relevant insurance carrier when the damage claim demand exceeds $5,000. Despite the fact that Mr. Little's claim exceeded this amount, his claim was not submitted due to miscommunications related to the recent changes in position. It is my belief that there were miscommunications and assumptions made regarding this claim because of the restructuring occurring in the Company at that time.

7. Specifically, I believe Mr. Blanchard or others at the company assumed Ms. Hand was or had submitted Mr. Little's claim to the relevant insurance company, and Ms. Hand believed that was being taken care of by Mr. Blanchard. Essentially, all those involved in this matter assumed that, as was Synergies3's normal business practice, this type of claim would have been and already had been tendered to the relevant insurance carrier. Ultimately, when Synergies3 was served with this lawsuit, it believed insurance was already in place and handling the matter. Based on that assumption, the company did not believe further action was necessary.

8. Synergies3 had numerous communications by way of email with Mr. Little's counsel prior to this lawsuit being brought. In those communications, the company actively responded to his counsel's emails. I believe those communications showed Synergies3's intention to defend itself against Mr. Little's claims.

9. After service in this lawsuit, Synergies3 did not receive any notifications pertaining to this lawsuit until it received notice of the hearing on damages. Synergies3 did not receive notice of any motions or other hearings in this case. The first notice received by the company after this lawsuit was initiated was the notification of the damages hearing.

10. In regards to the installation that took place at Mr. Little's residence, an initial investigation by Synergies3 revealed that the coax wire was run underneath the carpet in the entryway, and there was no exposed coax or wire(s) in the entryway or above the carpet. Furthermore, in communicating with the technician, he confirmed the wire was installed beneath the carpet, as is standard protocol for these types of installations. In sum, Synergies3's initial investigation determined the installation was done correctly.

11. Furthermore, all Synergies3 technicians are aware that improperly installing a system, including installing it in a manner that leaves coax wires exposed over carpet, is grounds for immediate termination. No reprimand or termination was found necessary in this situation because the installation had been performed in accordance with standard procedures.

12. After an installation is completed at a customer's home, the customer must signed off on and approve all work performed by the technician. At that time, if the customer has any concerns or problems – for example a concern about exposed wires – he or she would raise those concerns with the technician so the problem could be remedied.

13. Synergies3's initial investigation in this matter showed that once the installation was completed at Mr. Little's residence, Mr. Little signed off on the work performed and did not raise any concerns about exposed coax wires or an improper or dangerous installation.

#6235065.4

If there had been exposed wires in Mr. Little's home after the installation, Mr. Little would have requested that problem be fixed prior to the technician departing instead of signing off on the work.

14. I do not believe the installation performed at Mr. Little's residence was done improperly or that it resulted in any dangerous conditions. The installation was performed in accordance with standard protocols and procedures, and Synergies3's initial investigation determined all aspects of the installation performed in Mr. Little's home were done correctly.

FURTHER AFFIANT SAYETH NOT.

_____
Eric Atchley

SUBSCRIBED AND SWORN TO before me on this 25 day of September 2020, to certify which witness my hand and seal of office.

_____
NOTARY PUBLIC, STATE OF TEXAS

#6235065.4

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____ORANGE_____ )

On __9/25/2020__ before me, __Rahma A. Asiedu__
(insert name and title of the officer)

personally appeared __Eric Atchey__,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

RAHMA A. ASIEDU
COMM. #2319542
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires 01/29/2024